JOURNAL ENTRY AND OPINION
In this consolidated appeal, appellant Angela Thomas appeals a decision by the trial court granting permanent custody of her children, Brandon, Shannon, and Sherrell Thomas to the Cuyahoga County Department of Children and Family Services (CCDCFS). Angela Thomas assigns the following two errors for our review:
 I. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN GRANTING PERMANENT CUSTODY WHEN NO GUARDIAN AD LITEM'S REPORT WAS FILED WITH THE COURT.
 II. THE TRIAL COURT COMMITTED ERROR TO THE PREJUDICE OF APPELLANT, CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE, BY DETERMINING THAT THE ALLEGATIONS OF THE COMPLAINT FOR PERMANENT CUSTODY WERE PROVEN BY CLEAR AND CONVINCING EVIDENCE.
Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.
On January 20, 1998, the Cuyahoga County Department of Children and Family Services (CCDCFS) filed a complaint alleging that appellant had neglected Brandon (DOB 1/5/84), Shannon (DOB 6/2/85) and Sherrell (DOB 2/14/92). CCDCFS also filed a motion for pre-adjudicatory temporary custody alleging that "the children are in immediate danger from their surroundings, and removal is necessary to prevent immediate or threatened physical or emotional harm." The children had been adjudicated dependent and neglected on September 18, 1995, at which time, the trial court awarded temporary custody to CCDCFS. Here, the complaint seeks an order awarding permanent custody of the children to CCDCFS.
On January 22, 1998, the trial court awarded emergency temporary custody of the children to CCDCFS and ordered a guardian ad litem to be appointed for the children. At a preliminary hearing on February 23, 1998, the trial court ordered Angela Thomas to undergo a psychiatric examination.
The trial court heard the motion for permanent custody on August 6, 1998. CCDCFS presented the testimony of Thomas Scully who testified that Brandon, Shannon, and Sherrelle Thomas had been in the agency's custody since September 1993. Scully testified that Family Services had removed the children from Angela Thomas' home because she had left them unsupervised and had not kept their doctors' appointments.
At the time the children were removed, CCDCFS set up a case plan for Angela Thomas to follow in order to facilitate a reunification with her children. Angela Thomas was ordered to receive a mental health assessment, to undergo a drug and alcohol assessment, to attend out-patient drug and alcohol counseling and parenting classes, and to prove to CCDCFS that she could provide adequate housing for her children.
Angela Thomas was referred to the Neighborhood Center for mental health counseling. Scully testified that Thomas attended eleven sessions, then terminated the counseling against the advice of her counselor. Also, in May of 1996, Thomas was referred to the Total Resources Parents' Program for a sixteen week parenting class. Thomas only attended the program for one month. Additionally, Thomas withdrew from a sixteen week outpatient drug and alcohol treatment program after only three weeks.
Scully testified that Thomas had a total of five children by four different men and that she had a history of abusive relationships. None of the children's fathers have ever visited the children or inquired about their welfare. Scully also testified that Thomas' home was not properly furnished for children because the children did not have beds and the home had no stove. Scully testified that Thomas moved approximately six times since her children were placed in the temporary custody of CCDCFS and that she didn't always call and let him know where she was. He added that he had not seen any evidence that Thomas had obtained suitable housing for the children.
Scully also testified that Thomas had been disruptive during supervised visits with her children, including incidents in which she yelled at the children, attempted to remove then from the building, and instructed them not to obey their foster parents.
Patrick Washington, who supervised some of Thomas' visits with her children at the Metzenbaum Center, confirmed that Thomas often argued with and yelled at her children. He added that Brandon was always upset at the end of their visit and often became upset during their visits. Washington testified that despite repeated attempts to explain the guidelines of the visitation program to Thomas, she never seemed to want to abide by the rules regarding visitation. Washington testified that Thomas walked off the grounds with the children on three occasions despite being told not to do so. She also attempted to take the children off the grounds in her car but was stopped by one of the workers.
Thomas produced evidence that she completed several counseling programs, including a counseling program at Target City, a parenting program at Beech Brook Center, a substance abuse and parenting program at Metzenbaum Children's Center called Recovery Resources, and counseling at the May Dugan Center. However, none of these programs were among those recommended by CCDCFS.
Angela Thomas testified that she moved just three times in the past five years and that she always notified Scully of her new address. Thomas stated that she did not need drug treatment or mental health treatment but attended treatment programs because of Scully instructions. She denied yelling at the children and denied attempting to remove them from the Metzenbaum Center. She also claimed to have had beds for her children at all times during the past five years and to have had adequate housing the whole time. She admitted being arrested for domestic violence a year earlier after a fight with her youngest child's father.
The trial court awarded custody of Brandon, Shannon, and Sherrell to CCDCFS after finding that the children had been neglected.
 I don't think anyone doubts Mrs. Thomas' sincerity and concern for her children. But it's clear to the Court that this is a case of too little too late regarding neglect. There's been a five-year period here and there's like total denial that there's ever been a problem, which obviously is incredible. So I think she's in what's called a state of denial for not just those activities, but the other elements involved regarding housing and she was in several abusive relationships, granted, and that's a factor which might partially excuse her behavior. But on the other hand this Court has to be concerned about the child, not about her. She's an abused woman. And that might be conceded. However, to allow the children to remain in the — for the time period that was applicable, anyhow, with these abusive men, is a failure to protect the children. That's neglect.
(Tr. 110-111.)
This appeal followed.
In her first assignment of error, Thomas argues the trial court erred in granting permanent custody of the children to CCDCFS when no guardian ad litem's report was filed with the court.
R.C. 2151.414 (C) provides:
 In making [permanent custody determinations], a court shall not consider the effect the granting of permanent custody to the agency would have upon any parent of the child. A written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing held pursuant to division (A) of this section or section 2151.35 of the Revised Code but shall not be submitted under oath.
Thomas argues that no guardian ad litem report was filed. Our review of this record shows indeed that no guardian ad litem
report was filed with the trial court and that no report is a part of our record. We also note that Thomas did not object at the trial court to the lack of the guardian ad litem report. However, the record does show that the guardian ad litem did testify at the hearing and recommended that the trial court grant permanent custody of the children to CCDCFS. The trial court in its journal entry referenced that it had considered the guardianad litem's recommendation.
This court has held that any claim of error arising from a guardian ad litem's failure to file a written report is waived when the argument is not raised in the trial court. E.g. In reCordell (Apr. 2, 1992), Cuyahoga App. Nos. 60049 and 60050, unreported. The record shows no prejudice because the guardian adlitem testified orally at the hearing and was subject to full cross-examination. Nor can Thomas show plain error because she cannot show the result of trial would have been different if a written report (repeating the oral report) had been filed. Accordingly, Thomas' assigned error is overruled.
In her second assignment of error, Thomas argues the trial court's decision was not supported by the weight of the evidence presented. In order to justify termination of parental rights and award permanent custody of a child who is neither abandoned nor orphaned to a public children's services agency, a juvenile court must find by clear and convincing evidence that: (1) the grant of permanent custody to the agency is in the best interest of the child; and (2) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. In re Patterson (1999), Summit App. No. 19276, unreported, citing In re William S. (1996), 75 Ohio St.3d 95, 99. Clear and convincing evidence is "evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." In re King (Aug. 11, 1999), Adams App. No. 99CA671, unreported, citing In re Adoptionof Holcomb (1985), 18 Ohio St.3d 361, 368; Cross v. Ledford
(1954), 161 Ohio St. 469, paragraph three of the syllabus. See also Cincinnati Bar Assn. v. Massengale (1991), 58 Ohio St.3d 121,122.
"The standard of review for weight of the evidence issues, even where the burden of proof is `clear and convincing,' retains its focus upon the existence of some competent, credible evidence."Hawn v. Pleasant (May 28, 1999), Scioto App. No. 98CA2592, unreported, citing State v. Schiebel (1990), 55 Ohio St.3d 71,74. In other words, when reviewing awards of permanent custody to public children services agencies, judgments supported by some competent, credible evidence must be affirmed. In re Rowe (Jan. 30, 1998), Scioto App. No. 97CA2529, unreported, citing Jones v.Lucas County Children Services Board (1988), 46 Ohio App.3d 85,86.
Our review of the record reveals there was competent, credible evidence upon which the trial court could determine that granting permanent custody of the children to CCDCFS is in the best interest of the children and that the children could not and should not be placed with either parent within a reasonable time. The evidence demonstrated that Thomas had been separated from her children for five years. However, CCDCFS presented evidence that Thomas failed to comply with the reunification plan set forth by CCDCFS, which required her to obtain suitable housing for her children and to undergo counseling. Despite her expressed desire to be reunited with her children, Thomas failed without justifiable reason to complete the counseling programs recommended by CCDCFS and continued during trial to deny that she was in need of counseling. She also presented no evidence that she had obtained suitable housing for the children. If it is shown by clear and convincing evidence that a parent has continuously and repeatedly failed to substantially remedy the conditions which led to the grant of temporary custody of her children to a children's services agency, the court must find that the children cannot be placed with the parent within a reasonable time. R.C. 2151.414 (E)(1). The evidence presented before the juvenile court made clear that the conditions which led to the temporary custody order had not been rectified by Thomas nearly five years later. Under the circumstances, we conclude that the trial court properly concluded that Thomas' children could not be placed with her within a reasonable time.
We also find that CCDCFS made a good faith effort to implement the reunification plan as required by R.C. 2151.414. See In reGrant (Mar. 12, 1998), Cuyahoga App. No. 71946, unreported. A good faith effort has been defined as "an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." Id. (Citation omitted.) CCDCFS established a case plan for Thomas which required her to (1) secure appropriate housing for her children; (2) receive a psychological assessment; (3) participate in ongoing counseling to address her mood swings and erratic behavior; (4) receive a drug assessment; (5) complete an outpatient substance abuse program at A.I.R.; and (6) complete a parenting program at A.I.R. Thomas admitted that she failed to complete the counseling programs set forth under the plan and failed to provide any justification for her failure to do so. She also failed to acknowledge or correct her inappropriate behavior during visits with the children. Furthermore, she failed to produce any proof that she had obtained suitable housing for the children or that she contacted CCDCFS to demonstrate that such appropriate housing had been obtained. We conclude that Thomas' failure to satisfactorily complete the case plan was due to a lack of cooperation on her part, not to any wrongdoing by CCDCFS. Accordingly, we overrule Thomas' second assignment of error.
The judgment of the trial court is affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Juvenile Court Division of Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, P.J., and TIMOTHY E. McMONAGLE, J., CONCUR.
 _____________________ PATRICIA ANN BLACKMON JUDGE