OPINION
{¶ 1} Suretha Rogan appeals from a judgment of the Clark County Court of Common Pleas, Juvenile Division, awarding permanent custody of her daughter, S.A., to the Clark County Department of Job and Family Services (the Agency). Rogan presents four assignments of error. She claims that the trial court abused its discretion both in refusing to order her returned from Marysville Prison to enable her to testify at the *Page 2 
permanent custody hearing and in denying a three-month continuance so that she could testify after her release from prison. She further maintains that the trial court's decision awarding permanent custody to the Agency is against the manifest weight of the evidence. Rogan also asserts, and we agree, that she was denied the effective assistance of trial counsel. We conclude that trial counsel was ineffective in that he failed to protect Rogan's right to a fair trial by failing to ensure her meaningful participation in the permanent custody hearing. Therefore, the judgment of the trial court is Reversed. The remaining assignments of error are rendered moot.
 I {¶ 2} When S.A. was born, on May 6, 2006, both she and her mother tested positive for the presence of cocaine and marijuana in their systems. The Agency was contacted, and S.A. was immediately removed from Rogan's custody. Five older children had previously been removed from Rogan's custody, but only S.A. is the subject of this appeal.
 {¶ 3} The trial court adjudicated S.A. dependent and granted temporary custody to the Agency. A case plan was established for Rogan, with the goal of reunification. Rogan was making some progress on that plan when she was arrested for a probation violation in October, 2006. The Agency then sought permanent custody of S.A.
 II {¶ 4} Ms. Rogan's Second Assignment of Error is as follows: *Page 3 
 {¶ 5} "APPELLANT WAS DEPRIVED OF HER RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
 {¶ 6} Rogan argues that her trial counsel was ineffective because he failed to protect her due process right to meaningful participation in the permanent custody hearing, thereby denying her a fair trial. We agree.
 {¶ 7} The right of parents to raise their children is an "essential" and "basic" civil right. In re Hayes (1997), 79 Ohio St.3d 46, 48, citing In re Murray (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169, in turn quoting Stanley v. Illinois (1972), 405 U.S. 645, 651,92 S.Ct. 1208. See, also, Santosky v. Kramer (1982), 455 U.S. 745, 102 S.Ct. 1388
(Parents have a fundamental liberty interest in the care, custody, and management of their children.) Furthermore, the parents' right to custody of their children has been described as "paramount."Hayes, supra, at 48, quoting In re Perales (1977), 52 Ohio St.2d 89, 97,369 N.E.2d 1047. In fact, the permanent termination of parental rights has been described as "the family law equivalent of the death penalty."Hayes, supra, at 48, quoting In re Smith (1991), 77 Ohio App.3d 1, 16,601 N.E.2d 45. "Therefore, parents `must be afforded every procedural and substantive protection the law allows.'" Hayes, supra, at 48, quoting Smith, supra, at 16.
 {¶ 8} For these reasons, both R.C. 2151.352 and Juv. R. 4 establish a parent's right to counsel in termination proceedings. Jones v. LucasCty. Childrens Serv. (1988), 46 Ohio App.3d 85, 86, 546 N.E.2d 471. A parent's right to counsel arises from the guarantees of due process and equal protection contained in the constitutions of Ohio and the United States. State ex rel. Heller v. Miller (1980), 61 Ohio St.2d 6. *Page 4 
399 N.E.2d 66, paragraph two of the syllabus. That right to counsel includes the right to the effective assistance of trial counsel. In re Wingo,143 Ohio App.3d 652, 666, 2001-Ohio-2477. The test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking the permanent, involuntary termination of parental custody. In re T.P., Montgomery App. No. 20604, 2004-Ohio-5835, ¶ 45, citing Jones, supra, at 86-87.
 {¶ 9} In order to prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052. To show deficiency, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of effective assistance. Id. The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings. Id. Hindsight may not be allowed to distort the assessment of what was reasonable in light of counsel's perspective at the time. State v. Cook (1992),65 Ohio St.3d 516, 524, 605 N.E.2d 70.
 {¶ 10} Even assuming that counsel's performance was ineffective, the defendant must still show that the error had an effect on the judgment.State v. Bradley (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373. Reversal is warranted only where the defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding likely would have been different. Id.
 {¶ 11} In Rogan's case, after the trial court refused to continue the hearing for another three months in order to allow Rogan the opportunity to testify in person, the *Page 5 
only evidence that counsel offered on her behalf was a brief questionnaire that she had completed for counsel early in his representation. Assuming, arguendo, that the document was properly admitted and not in violation of Rogan's attorney/client privilege, this document is not remotely adequate to present Rogan's position in this case. The bare statements offered in the questionnaire begged further explanation, which only Rogan could provide. In a case similar to the instant one, the Eleventh District Court of Appeals reversed an order of permanent custody, finding trial counsel ineffective, in large part for allowing three letters from his client to the court to serve as his incarcerated client's only participation in the proceedings. In reRoque, Trumbull App. No. 2005-T-0138, 2006-Ohio-7007.
 {¶ 12} Rogan's trial counsel had a duty to obtain more meaningful input from Rogan. Besides her live testimony, counsel had other options to protect Rogan's rights. For example, he could have deposed Rogan; he could have obtained her sworn affidavit or statement; or he could have arranged for her participation in the hearing via telephone. He failed to do any of these, thereby depriving Rogan of a meaningful opportunity to participate in the permanent custody hearing.
 {¶ 13} "The fundamental requirement of due process is an opportunity to be heard at a meaningful time and in a meaningful manner." In theMatter of Aaron Jones (March 31, 1992), Lucas App. No. L-91-204, citingMathews v. Eldridge (1976), 424 U.S. 319, 313, 96 S.Ct. 893. Because counsel did not ensure that Rogan had an opportunity to be heard in a meaningful manner, his representation was deficient, and the first prong of Strickland is met.
 {¶ 14} Rogan must also meet the second prong by demonstrating that she was *Page 6 
prejudiced by counsel's ineffectiveness. Prejudice sufficient to warrant reversal exists when the proceedings were fundamentally unfair due to counsel's defective representation. State v. Carter, 72 Ohio St.3d 545,558, 1995-Ohio-104, citing Lockhart v. Fretwell (2993), 506 U.S. 364,370, 113 S.Ct. 838. That is the case here.
 {¶ 15} Counsel's failure to protect Rogan's right to meaningful participation in the permanent custody hearing caused the trial to be fundamentally unfair. "When there is no possibility for a fair trial, it is inherently prejudicial to the integrity of the trial. . . . [T]here is no possibility that a fair trial, one with a reliable outcome, resulted from the proceedings herein." Roque, supra, at ¶ 13. See, also,Strickland, supra, at 686 ("[c]ounsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.") Thus, the second prong ofStrickland is met. Because Rogan was denied the effective assistance of trial counsel, we sustain her Second Assignment of Error.
 III {¶ 16} Ms. Rogan's First Assignment of Error is as follows:
 {¶ 17} "THE COURT ENGAGED IN AN INCOMPLETE AND INCORRECT ANALYSIS CONCERNING APPELLANT'S RIGHT TO ATTEND THE PERMANENT CUSTODY HEARING, WHICH ULTIMATELY RESULTED IN A DEPRIVATION OF HER CONSTITUTIONAL RIGHT TO DUE PROCESS."
 {¶ 18} In her First Assignment of Error, Rogan asserts that in light of her particular circumstances, the trial court should have ordered her to be transported from prison to court for the permanent custody hearing. This assignment of error has been *Page 7 
rendered moot by our ruling on her Second Assignment of Error.
 IV {¶ 19} Ms. Rogan's Third Assignment of Error is as follows:
 {¶ 20} "THE TRIAL COURT ERRED IN DENYING APPELLANT A REASONABLE CONTINUANCE."
 {¶ 21} In her Third Assignment of Error, Rogan contends that the trial court should have granted a three-month continuance in order for her to be able to testify after her release from prison. Again, due to our ruling on Rogan's Second Assignment of Error, this assignment of error is moot.
 V {¶ 22} Ms. Rogan's Fourth Assignment of Error is as follows:
 {¶ 23} "THE TRIAL COURT'S FINDINGS AND DISPOSITION ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 24} Finally, Rogan argues that the trial court's decision to terminate her parental rights and to award permanent custody of her daughter, S.A., to the Agency, is against the manifest weight of the evidence. In support she points to several discrepancies between the evidence presented at trial and the court's findings. For example, although Rogan stated in the questionnaire that her aunt had been bringing S.A. to visit her in prison, the trial court stated that there had been no regular and meaningful contact between mother and daughter. Also, among other alleged inconsistencies, the trial court's statement that Rogan failed to complete parenting *Page 8 
classes was in direct conflict with the parties' stipulation that she had completed the parenting classes, along with several other classes.
 {¶ 25} Although we need not rule on this assignment of error, because it is rendered moot by our disposition of Rogan's Second Assignment of Error, we do want to point out that discrepancies like those alleged by Rogan, between the record and the court's written decision, do undermine our confidence in that decision.
 VI {¶ 26} Rogan's Second Assignment of Error having been sustained, her remaining assignments of error having thereby been rendered moot, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
IT IS SO ORDERED.
WOLFF, P.J., and BROGAN, J., concur.
Copies mailed to:
 Hon. Joseph N. Monnin *Page 1